UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE XETHANOL CORPORATION DERIVATIVE   :
LITIGATION                               :          06 Civ. 15536 (HB)
------------------------------------------------------------------------ :
THIS DOCUMENT RELATES TO:                :          **OPINION & ORDER**
                                         :
All Actions                              :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge*:**

Plaintiffs Marco E. Radnuz, August Russ, and Katherine Fay-Hammonds (collectively "Plaintiffs") bring this putative shareholders' derivative action against Lawrence S. Bellone ("Bellone"), Christopher D'Arnaud-Taylor ("Taylor"), Jeffrey S. Langberg ("Langberg"), Richard Ditoro ("Ditoro"), David R. Ames ("Ames"), William P. Behrens ("Behrens") (collectively the "Individual Defendants"), and nominal defendant Xethanol Corporation ("Xethanol" or the "Company") (collectively, "Defendants").  Plaintiffs allege derivative claims for breach of fiduciary duty, misappropriation of information, contribution and indemnification.[1]

Defendants move to dismiss Plaintiffs' derivative claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 23.1.  Because Plaintiffs' Amended Consolidated Derivative Complaint ("Am. Compl." or "Amended Complaint") does not meet the demand requirements of Fed. R. Civ. P. 23.1, I dismiss it in its entirety.

## I.   FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint and must be taken as true for purposes of the pending motion to dismiss.  Plaintiffs Marco E. Radnuz, August Russ, and Katherine Fay-Hammonds were shareholders of Xethanol during the period of alleged wrongdoing, and continue to hold shares in the Company.  Plaintiffs are respectively citizens of Canada, Ohio and Florida.

Nominal Defendant Xethanol Corporation is a Delaware corporation with its principal place of business in New York, New York.  All individual Defendants are citizens or residents of the State of New York.  Defendant Taylor was Chairman, Chief Executive Officer and President

---

* Jessica Yuen, a summer 2007 intern in my Chambers, and currently a second-year law student at George Washington University Law School, provided assistance in the research and drafting of this Opinion.

[1] On March 15, 2007, I consolidated the two member actions Russ v. Bellone, et al. (07cv00991) and Fay-Hammond v. Bellone, et al. (07cv01394). On March 28, 2007, Plaintiffs amended their consolidated verified shareholders derivative complaint as of right.  There is a corresponding federal securities class action before me (*In re Xethanol Corporation Securities Lit.*, 06cv10234) which was filed on October 23, 2006.  Defendants in this securities action have also moved to dismiss and that decision is *sub judice*.

of the Company until late August 2006.  Defendant Langberg is a former director of the Xethanol Board.  Defendant Bellone, during the period of alleged wrongdoing, was Chief Financial Officer, and has held this position since April 5, 2005.  Defendant Ditoro has been a member of the Board of Directors of the Company since September 7, 2006.  Defendant Ames has been a member of the Board of Directors of the Company since October 1, 2006, and has been the Company's Chief Executive Officer and President since November 9, 2006.  Defendant Behrens has been a member of the Board of Directors of the Company since October 1, 2006.

Xethanol was incorporated in Delaware on January 24, 2000 ("Old Xethanol") to capitalize on the growing market for ethanol, a clean burning and renewable fuel that is a primary gasoline additive.  On February 2, 2005, Old Xethanol entered into a reverse merger with Zen Acquisition Corp., a Delaware corporation and a wholly owned subsidiary of Zen Pottery Equipment, Inc. ("Zen"), a publicly traded Colorado corporation.  Following the merger, Zen reincorporated from the State of Colorado to the State of Delaware and changed its corporate name to Xethanol Corporation.

While ethanol is traditionally produced from corn, Xethanol's business strategy is to produce ethanol from biomass (generally post-industrial food or paper production waste).  Investors focused on this distinction because biomass, unlike corn, has zero or negative cost.  According to Plaintiffs, Defendants stated that the Company would follow a three-stage business model during the purported class period, January 31st through August 6th of 2006: (1) self-sustain on revenues produced from traditional corn ethanol production, (2) raise money from public and private investors, and (3) commercialize biomass ethanol production.  Am. Compl. ¶¶ 4, 5.

In August 2006, ShareSleuth.com, a forensics securities investigations website, published a widely circulated report that was highly critical of Xethanol and its management.  Among other things, the report "revealed" that (1) there was little evidence that Xethanol had produced sufficient amounts of ethanol from biomass to support its claim that it could achieve near-term commercialization, (2) substantial related party transactions had not been disclosed, including the fact that many of the Company's early investors had been disciplined by regulatory agencies and that Defendant Taylor, Chairman, CEO and President of the Company during the Class Period, had fabricated portions of his resume.

Plaintiffs allege that Defendants knowingly misrepresented material facts as to the state of its facilities and of Xethanol's ability to commercialize production of ethanol from biomass in Defendants' 2005 10-KSB SEC report and in press releases.  Specifically, Plaintiffs contend that Xethanol misrepresented the true status of Permeate, one of Xethanol's ethanol production plants.  For example, Plaintiffs cite Xethanol's February 27, 2006 press release, which implied that both of Xethanol's Iowa facilities were operational.  Am. Compl. ¶ 42 ("In Iowa, Xethanol owns two ethanol production facilities, where it is deploying [proprietary biotechnologies to extract and ferment the sugars trapped in biomass waste concentrations].").  Plaintiffs, however, allege that instead, Permeate "lay abandoned and neglected with no current water or sewer service and no employees working at the site."  Am. Compl. ¶ 9.

The Amended Complaint states that Defendants also knowingly misrepresented Xethanol's ability to commercialize the production of ethanol from biomass waste and that Xethanol's announcements of joint ventures[2] and strategic alliances to develop and execute business outside of the Iowa corn-belt region were misleading.  Plaintiffs assert that these announcements, made throughout the period of alleged wrongdoing, "served to support investors' belief that the Company was operating according to plan, and was already reaching its second stage of development."  Am. Compl. ¶ 36.

Further, Plaintiffs allege that Defendants claimed in their 2005 SEC filing to use a complex system of internal disclosure controls and procedures, which, combined with their positive statements about the Company, bolstered investor confidence.  Am. Compl. ¶¶ 7, 53-55.  Plaintiffs contend, however, that Xethanol operated unethically and did not disclose relationships with initial investors who "had alarming records of stock fraud, market manipulation, breach of fiduciary duty, and shareholder abuse."  Am. Compl. ¶ 9.[3]

---

[2] Xethanol acquired 100% of the issued and outstanding common stock of: Advanced Bioethanol Technologies, Inc. ("ABTI") on June 29, 2004 for $300,000 (200,000 shares of Xethanol stock at $1.50/each); Ethanol Extraction Technologies, Inc. ("EETI") on September 30, 2004 for $550,000 (169,230 shares of Xethanol stock at $3.25/each); Superior Separation Technologies, Inc. ("SSTI") on January 11, 2005, for $812,500 (250,000 shares of Xethanol stock at $3.25/each; adjusted to 220,702 shares after the reverse merger); Xylose Technologies, Inc. ("XTI") on August 15, 2005, for $2,385,000 (567,857 shares of Xethanol stock at $4.20/each).  Am. Compl. ¶ 48.

[3] To support these allegations of unethical behavior, Plaintiffs quote Louis Bernstein's November 9, 2006 letter of resignation from the Board in which he references a "lack of full disclosure . . . to certain members of a previous board . . . with respect to a certain transaction involving the Company . . . [and] with respect to certain current relationships with the Company, and my disagreement with new management over its proposed business strategy."  Am. Compl. ¶ 102.  Bernstein also wrote a letter, dated November 16, 2006, in which he stated that he
> do[es] not understand the basis upon which Xethanol Corporation is able to make a statement and represent that 'there has been no transaction during the past two years, or proposed transaction, to which Xethanol was or is to be a party in which Mr. Ames had a direct or indirect interest required to be disclosed under Item 404 of Regulation S-B.'  Am. Compl. ¶ 104.

Plaintiffs assert that a demand on Xethanol's Board would be futile because at the time the Complaint was filed, the board was comprised of interested, named defendants who face a substantial likelihood of personal liability as a result of this action, the board is incapable of suing itself, the alleged acts are incapable of ratification, and demand on the thousands of shareholders would be impracticable.  Am. Compl. ¶¶ 125, 126.  To the Court's knowledge, the only related action is the putative securities class action, *In re Xethanol Corporation Securities Litigation*, 06-CV-10234, also before me.

## II.   STANDARD OF REVIEW

On a motion to dismiss for failure to satisfy the demand requirement of Fed. R. Civ. P. 23.1,[4] a complaint should be dismissed if the plaintiff does not "allege with particularity the efforts, if any, made . . . to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1.  To determine whether the plaintiffs have alleged facts sufficient to satisfy the requirements of the rule, courts "must apply the demand futility exception as it is defined by the law of the State of incorporation."  *Kamen v. Kemper Financial Servs., Inc.*, 500 U.S. 90, 108-09 (1991) (striking down lower court's attempt to create a uniform federal common law rule that abolished the futility exception).

## III.   DISCUSSION

### A.  Demand Requirement & Futility Exception

Derivative actions serve a singular purpose – "to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers."  *Kamen*, 500 U.S. at 95 (internal quotation marks omitted) (citation omitted).  However, to prevent misuse of this unique corporate remedy, which allows shareholders to circumvent the board's business judgment and to ensure that corporate directors retain their managerial freedom, equity courts have established the demand requirement.  Codified in Fed. R. Civ. P. 23.1, the demand requirement directs plaintiffs to make

---

Plaintiffs also quote Marc Oppenheimer's letter of resignation from the Board, in which he disagrees with Ames' and the Board's plan of action in expanding Xethanol's biomass-to-ethanol program; Oppenheimer opposed the plan because it was "unachievable and not in the interests of shareholders."  Am. Compl. ¶ 103.

[4] Fed. R. Civ. P. 23.1 states in relevant part that "[i]n a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint . . . shall allege . . . with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

a demand on the board prior to bringing suit or in the alternative, to show that making a demand on the board would have been futile at the time the complaint is filed. *See Daily Income Funds, Inc. v. Fox*, 464 U.S. 523, 530 (1984) (explaining that the demand requirement was designed to limit shareholder derivative litigation "to situations in which, due to an unjustified failure of the corporation to act for itself, it was appropriate to permit a shareholder 'to institute and conduct a litigation which usually belongs to the corporation.'") (citation omitted).

Where the complaint alleges a failure to manage the internal affairs of the Company, demand is excused when "the particularized factual allegations of the derivative complaint create a reasonable doubt that as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband,* 634 A.2d 927, 934 (Del. 1993).

"A director is interested when he will receive a personal financial benefit from a transaction that is not equally shared by the corporation, or when a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *In re: Pfizer Inc. Derivative Sec. Litig.*, 04-CV-10075 (RO), Slip Op., at 5 (S.D.N.Y. Jul. 17, 2007); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995). Further, a director is "not independent" if his decision is not based on "the corporate merits of the subject before the board rather than extraneous considerations of influence," or he is dominated or controlled or beholden in some way to an individual or entity interested in the conduct of the transaction at issue. *Id.*

B.  Disinterestedness and Independence of the Board

The Court must determine whether the Amended Complaint alleges particularized facts that create a reasonable doubt that a majority of the board—here, at least four out of the six board members[5]—"could have properly exercised its independent and disinterested business judgment in responding to a demand" at the time the complaint was filed. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993); *accord Aronson*, 473 A.2d at 805.[6]  Defendants contend that

---

[5] While Defendants argue that Langberg, a former director and shareholder of Xethanol, should be excluded from the analysis, both Defendants and Plaintiffs nonetheless include Langberg in the demand futility discussion. The proper analysis requires this Court to determine "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, *as of the time the complaint is filed*, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (emphasis added). Thus, my analysis is limited to the six board members at the time the action was filed—Taylor, Ditoro, Ames, Behrens, Bellone, and Klett. Am. Compl. ¶ 117.

[6] Further, there is case law to support the proposition that because there is an even number of board members, to find that demand was not excused, I need only determine that at least half of the total number (here, three out of six) are disinterested and indepdendent. See, e.g., *In re Walt Disney Co. Der. Litig.*, 731 A.2d 342, 354 (Del. Ch. 1998), *aff'd in part and rev'd in part sub nom.*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("[F]or demand to be futile, the

Plaintiffs have not made particularized factual allegations to show that a majority of Xethanol's six-member Board was interested or beholden to a controlling board member or outside entity or individual.[7]

However, where the plaintiff alleges directors failed to act, as the derivative Plaintiffs do in this case, "the complaint must plead with particularity the 'danger signs' that were ignored or 'additional measures' the directors should have taken." *In re Baxter Int'l Shareholders Litig.*, 654 A.2d 1268, 1271 (Del Ch. 1995) (holding that directors are not ipso facto liable for failing to prevent officer wrongdoing; relying on their subordinates' honesty and integrity is not "egregious" unless directors ignore 'obvious danger signs of employee wrongdoing') (citations omitted); *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) (directors facing a "substantial likelihood" of personal liability are interested, while those facing a "mere threat" are not); *Aronson*, 473 A.2d at 815 ("mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors"); *Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003); *Rattner v. Bidzos*, 2003 Del. Ch. LEXIS 103 (Del. Ch. Oct. 7, 2003); *Mondschein v. Welch, N.Y.L.J.,* Dec. 30, 1992 (Sup.Ct.N.Y. Dec. 14, 1992) (applying Delaware law) (conclusory allegations that directors "participated in" and "knew of" the alleged wrongdoing or were "direct beneficiaries of" the wrongdoing are insufficient to excuse demand).

Thus, only in rare circumstances where the failure to act is so egregious that the directors face "a substantial likelihood of liability" will directors who are being sued for failing to supervise others have a sufficiently disqualifying interest as to negate the demand requirement. *Rales*, 634 A.2d at 936; *In re Baxter Int'l*, 654 A.2d at 1271. Mere conclusory allegations, like those in Plaintiffs' Amended Complaint,[8] that the directors "knew or should have known" about the misconduct are, as a matter of law, insufficient to excuse demand. *In re Baxter Int'l*, 854 A.2d at 1271. I will address the allegations of interest against each of the six board members.

---

Plaintiffs must show a reasonable doubt as to the disinterest of at least half of the directors").

[7] Defendants also argue that although constructed as a derivative action, the case at bar must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a derivative claim because (1) it has not pled injury to the corporation in any way; (2) it has not identified malfeasance or misfeasance or anything else by any of the individual actors that have injure the corporation in any forum; and (3) there is no plea in the derivative complain that speaks to corporate governance reformation in any way. Tr. of Oral Argument (Jul. 2, 2007), at 3:2-9. However, because I dismiss this action pursuant to Fed. R. Civ. P. 23.1, I need not reach these arguments.

[8] See, e.g., Am. Compl. ¶ 118 ("All of these directors face a substantial likelihood of liability in this action because of their failure, as directors, to assure that a reliable system of financial controls was in place and functioning effectively. The dramatic breakdowns and gaps in those controls were so widespread and systematic that the entire board faces substantial exposure to liability. These directors either knew or should have known that violations of law were occurring and took no steps in a good faith effort to prevent or remedy that situation, proximately causing hundreds of millions of dollars of losses for the Company.").

*(1)    Klett*

Although Edwin L. Klett was one of six board members serving at the time the action was filed, Klett is not named as an Individual Defendant in this suit, nor do Plaintiffs allege any wrongdoing on his part. For these purposes, I find him to be disinterested and independent.

*(2)    Ditoro*

Richard Ditoro has been a member of the Board since September 7, 2006. Am. Compl. ¶ 21. Plaintiffs' only allegation with respect to Ditoro in the Amended Complaint is that he "previously served on Xethanol's Board of Directors from June 2, 2005 through August 10, 2006" (Id. ¶ 121), the time of the alleged misconduct, and thus, they conclude, he faces a "substantial likelihood of liability," and is not disinterested or independent. Plaintiffs do not offer any particular example such as a financial interest, direct participation in the alleged wrongdoing, or any pending criminal or regulatory action against Ditoro personally or in his corporate capacity. The familiar incantation repeated by plaintiffs in support of demand futility in derivative cases is that directors are interested because they cannot be expected to "sue themselves." Am. Compl. ¶ 125(b). Derivative Plaintiffs here suggest that Ditoro falls from grace for this reason.

However, it is well established under Delaware law that the "mere threat" of personal liability in a derivative action does not render a director "interested" for purposes of the demand futility requirement. Plaintiffs have not pled with particularity facts to show that Ditoro faces a "substantial likelihood" of personal liability which would prevent him from impartially considering a demand. *Seminaris,* 662 A.2d at 1355; *see also In re Bristol-Myers Squibb Derivative Litig.*, No. 02-CV-8571 (LAP), 2007 U.S. Dist. LEXIS 25255, *27 (S.D.N.Y. Mar. 29, 2007). Nor have Plaintiffs alleged facts to show that either the directors as a group, or Ditoro individually, engaged in "such egregious conduct . . . that they face a substantial likelihood of liability." *Seminaris,* 662 A.2d at 1355. This is insufficient to meet the requirements of Fed. R. Civ. P. 23.1 and therefore, Ditoro must be considered disinterested and independent.

*(3)    Behrens*

William Behrens has been a member of the Xethanol Board since October 1, 2006. Am. Compl. ¶ 23. Plaintiffs allege that Behrens is interested because he is also Vice Chairman of Northeast Securities, Inc., Xethanol's placement agent in connection with its April 13, 2006 private offering of its common stock. In conjunction with that transaction, Xethanol paid Northeast approximately $1.9 million in fees. Am. Compl. ¶ 123. Plaintiffs assert that because

of Behrens' dual position on Northeast's and Xethanol's boards, "[h]e's financially beholden" and incapable of exercising independent business judgment.  Tr. at 12:20-21.

However, as Defendants point out, the Amended Complaint does not allege any particular facts or explain the injury suffered by the Company as a result of his dual board membership. For example, Plaintiffs do not allege that the Company suffered a lost opportunity, waste of assets, or any other injury.  *See, e.g., Khanna v. McMinn,* No. 20545-NC, 2006 Del. Ch. LEXIS 86 (Del. Ch. May 9, 2006) (finding director independent where complaint alleged that director also sat on the board of a software vendor that received over $ 2.2 million in revenue from the subject corporation because plaintiffs failed to allege that $ 2.2 million was material to the vendor or that the transaction might otherwise have influenced the director's decisions); *White v. Panic,* 793 A.2d 356, 366 (Del. Ch. 2000) (rejecting claim of director's lack of independence where the plaintiff did not allege particular facts indicating that $ 33,440 allegedly paid to director or his firm was so material as to taint the director's judgment).

Certainly simultaneous service on a Board of an entity that does business with another entity alone does not rise to the level of egregious behavior contemplated by the case law.  *See, e.g., Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 433 (citing *Langner v. Brown*, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) (applying Delaware law) ("The fact that several director defendants sat on the same boards of directors of other companies does not in itself establish lack of independence.")); *J.P. Morgan Chase & Co.*, 906 A.2d 808, 824 (Del. Ch. 2005) (finding that the chief executive of the United Negro College Fund ("UNCF") was an independent director of J.P. Morgan Chase ("JPMC"), despite the fact that JPMC had matched millions of dollars in contributions to UNCF and an interested director of JPMC also served as treasurer of UNCF); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 879 n.11 (D. Md. 2005) (under Delaware law, service on multiple boards is insufficient to render a trustee interested and not independent in a derivative action).

*(4)     Ames*

David Ames has been a member of the Xethanol Board since October 1, 2006 and has been the Company's Chief Executive Officer and President since November 9, 2006.  Am. Compl. ¶ 122.  Plaintiffs state that former directors of the Company, Mr. Bernstein and Mr. Oppenheimer, informed the board that they would resign if Mr. Ames was named President and CEO of the Company, and Bernstein stated that Mr. Ames failed to disclose certain related party transactions with respect to Xethanol and Coastal Energy Development as required by the

Securities and Exchange Commission. Id. ¶ 123. Accordingly, Plaintiffs assert that "it appears that there are one or more transactions involving Director Ames which have not been disclosed to the public [and a]s such, demand . . . would be futile." Pls' Response to Defs' Mot. to Dismiss, at 19.

Plaintiffs argue that Ames is interested because of his prior relationship with both Defendant Taylor and Coastal Energy and cite Bernstein's November 16, 2006 letter to the Company in which he alludes to "current relationships between Xethanol Corporation, Mr. Ames and one or more principals of Coastal Energy Development," i.e., Taylor. Am. Compl. ¶ 104. Plaintiffs also cite a ShareSleuth.com report which "uncovered" prior relationships between Taylor and Epiphany Partners, an equity firm which provided "help in the funding search" to Xethanol and Coastal Energy Development. Am. Compl. ¶ 96. However, while Plaintiffs set out all of the players here, they fail to connect the dots between the three. As a result, the Court is at a loss with respect to the specific transactions challenged or the injury to the corporation and I cannot determine the materiality of Mr. Ames' alleged interest in Coastal or his dependence on Taylor. *See Citron v. Daniell*, 796 F. Supp. 649, 649 (finding allegations that directors "engaged in" "participated in" and "caused" wrongdoing to be conclusory absent "specification of particular personal acts or conduct to sustain asserted conclusions."). Therefore, because Plaintiffs have not connected Ames' non-disclosure to a particular harm suffered by the Company or alleged facts to suggest that his business judgment is impaired, I find Ames disinterested and capable of exercising independent business judgment.

### *(5)   Bellone & Taylor*

Lawrence Bellone is a member of the Xethanol Board and was Chief Financial Officer during the period of alleged wrongdoing. Christopher D'Arnaud-Taylor was Chairman, Chief Executive Officer and President of Xethanol during the time of alleged wrongdoing until August 6, 2006. If the Court were to accept Plaintiffs' allegations against Bellone and Taylor and deem them to be "interested" (which is not at all clear given the threshold set by Delaware case law to overcome the presumption of independence), four out of the six, i.e. a majority, of the directors would still be disinterested and capable of exercising a valid business judgment with respect to acting upon a demand.

### C.   Control of Board by Bellone or Taylor

Plaintiffs have not alleged facts that show the current board of six is controlled or dominated by either Bellone, Taylor, or some outside individual or entity; therefore, demand

## IV. CONCLUSION

Because a majority of Xethanol's directors are not interested or lack independence as a matter of Delaware law, demand cannot be excused as futile and, therefore, because no demand was made on the Xethanol Board, pursuant to Fed. R. Civ. P. 23.1, Plaintiffs' Amended Derivative Complaint is dismissed.

The Clerk of the Court is instructed to close this motion and remove this case from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**August 16, 2007**

_____
**U.S.D.J.**

10